**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

TERRANCE GAILES

CIVIL ACTION

VERSUS

24-522-SDD-RLB

PNK (BATON ROUGE) PARTNERSHIP,
d/b/a L'AUBERGE CASINO & HOTEL
BATON ROUGE

# RULING

Before the Court is the Motion for Summary Judgment filed by Defendant PNK (Baton Rouge) Partnership, d/b/a L'Auberge Casino & Hotel Baton Rouge[1] ("PNK" or "Defendant").[2] Plaintiff Terrance Gailes ("Gailes" or "Plaintiff") has filed an Opposition,[3] to which Defendant has filed a Reply.[4] The Court has reviewed the record and confirmed that it has diversity jurisdiction under 28 U.S.C. § 1332.[5] The Court has considered the law, arguments, and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2023, Plaintiff, Terrance Gailes and his girlfriend, Quanisha Weams ("Weams"), were patrons of L'Auberge Casino & Hotel Baton Rouge.[6] At the time of the alleged incident—which was captured in real time on surveillance—Plaintiff and Weams were located in the Riverbend Terrace area of the casino's gaming floor near an Automatic

---

[1] The caption erroneously names the Defendant as Penn Entertainment, Inc. Dba L'Auberge Casino & Hotel Baton Rouge.
[2] Rec. Doc. No. 17.
[3] Rec. Doc. No. 19.
[4] Rec. Doc. No. 20.
[5] Rec. Doc. No. 1.
[6] Rec. Doc. No. 17-2 (fact 2 in Defendant's report); Rec. Doc. No. 19-1, (Plaintiff's response to Defendant's fact 2).

Teller Machine ("ATM").[7] Both parties agree the ATM is located adjacent to a marked exit door and that Plaintiff was familiar with the location of the door in relation to the ATM due to prior visits.[8] Defendant asserts the ATM is "not located directly behind the door, and it is instead off to the right side of the doors, aligned with the empty wall space."[9] Plaintiff stood to the left corner of the ATM—closer to the emergency exit door—while Weams utilized the ATM.[10] Surveillance footage shows two PNK employees—a security officer and a second employee—enter into the gaming area.[11] In the surveillance footage, the security officer opens the door first, which opens into the gaming area and towards the ATM.[12] The second employee pushed a cart holding a money vault towards the

---

[7] Rec. Doc. No. 17-2 (facts 4 and 7 in Defendant's report); Rec. Doc. No. 19-1, (Plaintiff's responses to Defendant's facts 4 and 7).

[8] Rec. Doc. No. 17-2 (facts 3 and 5 of Defendant's brief); Rec. Doc. No. 19-1, pp. 2-3. Plaintiff qualified Defendant's initial statement regarding Plaintiff's knowledge of the ATM and door location, adding he "did not have knowledge of when or how the door would be opened, particularly by employees moving large equipment." Rec. Doc. No. 19-1 (Plaintiff's responses to Defendant's facts 3 and 5). Defendant correctly disputed this statement by pointing out that Plaintiff did not provide evidence contradicting the fact or supporting his purported qualification. Rec. Doc. No. 20-1, p. 3. Plaintiff cites to Rec. Doc. Nos. 17-3, p. 23: 13-24; 17-4, p. 10: 22-24, but neither of these cites support Plaintiff's lack of knowledge of when or how the door would be opened. Pursuant to Local Rule 56(f), "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted" and "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." Accordingly, a party shall properly convert a movant's statement of material fact by "support[ing] each denial or qualification by a record citation as required by this rule."

[9] Rec. Doc. No. 17-2 (fact 6 of Defendant's brief). Plaintiff denies this material fact and claims "the direction of the ATM to the emergency exit doors depends on the perspective of the person. The ATM is inches away from the emergency exit door when the emergency exit door is opened. [I]f standing directly at the emergency exit doors the ATM is technically behind the person standing at the emergency exit doors. Further, a relevant inquiry is whether the door swing path encroaches upon the foreseeable patron-use zone, which it did. The configuration placed patrons around the ATM within the arc of the door." Rec. Doc. No. 19-1 (Plaintiff's response to Defendant's fact 6). Plaintiff cites the surveillance footage and Rec. Doc. No. 17-4, pp. 11:19-25; 12:1-10, but neither of these pieces of evidence contradict the fact asserted.

[10] Rec. Doc. No. 17-2 (fact 7 of Defendant's brief). Plaintiff qualifies this statement from Defendant, but cites Rec. Doc. No. 17-3, p. 26:6-10 and Rec. Doc. No. 17-4, p. 12:13-16; 12:1-10. This evidence supports Defendant's proposed material fact that Plaintiff was standing to the left of the ATM at the time of the alleged incident. Plaintiff argues in his denial that his position was "reasonably consistent with patron use," but provides no evidence to support this claim, nor to contradict Defendant's asserted material fact. Rec. Doc. No. 19-1 (Plaintiff's response to Defendant's fact 7). The Court also notes that the video footage confirms this fact. See Exhibit C-1, camera 1120; Exhibit C-1, camera 887.

[11] Exhibit C-1, camera 1120; Exhibit C-1, camera 887.

[12] Exhibit C-1, camera 1120; Exhibit C-1, camera 887.

doorway.[13] When the security officer opened the door into the gaming area, Plaintiff was standing to the left of the ATM and the door made contact with Plaintiff.[14] The door is controlled via a hinge/damper at the top and opens from the inside, and swings in the direction of the ATM.[15] During his deposition, Plaintiff testified to his familiarity with the doors in that location and that he had seen a woman using the door that night.[16] PNK ATM was intentionally placed to afford patrons "an accessible spot to cash in winnings or obtain cash."[17]

The parties disagree as to the purpose and usage of the doors. Plaintiff asserts the doors' purpose is for instances of emergency exit based on signage.[18] Defendant admits the doors' *primary* purpose is to serve as an emergency exit but that they are "occasionally utilized by the employees to transit the area."[19] The parties also dispute where the sign indicating "EMERGENCY EXIT" is located on the doors. Plaintiff references the door to be an emergency exit door,[20] and Defendant admits there are "emergency exit" markings but claims that the markings are on the inside of the door, not the side that was visible to Plaintiff.[21] The surveillance footage clearly shows markings on

---

[13] Exhibit C-1, camera 1120; Exhibit C-1, camera 887.
[14] Exhibit C-1, camera 1120; Exhibit C-1, camera 887; Rec. Doc. No. 17-2 (fact 7 of Defendant's brief).
[15] Rec. Doc. No. 17-2 (fact 8 of Defendant's brief). Plaintiff denies this fact but provides no evidence contradicting it. Rec. Doc. No. 19-1 (Plaintiff's response to Defendant's fact 8). Defendant cites to the video footage, which depicts the security officer pushing a push bar from the inside of the door and a hinge at the top of the door. Exhibit C-1, camera 1120; Exhibit C-1, camera 887.
[16] Rec. Doc. No. 17-2 (fact 12 of Defendant's brief). Plaintiff qualifies this statement but does not cite any evidence contradicting it and merely argues the relevance of only seeing one person use the door as opposed to seeing multiple people use the door. Rec. Doc. No. 19-1 (Plaintiff's response to Defendant's fact 12).
[17] Rec. Doc. No. 17-2 (fact 13 of Defendant's brief). Plaintiff also qualifies this statement but does not present evidence to dispute the substance of the fact asserted. Rec. Doc. No. 19-1 (Plaintiff's response to Defendant's fact 13).
[18] Rec. Doc. No. 19-1 (fact 1 of Plaintiff's brief).
[19] Rec. Doc. No. 20-1 (Defendant's response to Plaintiff's fact 1). Defendant cites to Risk Manager Jeannine Richert's testimony. Rec. Doc. No. 17-5, pp. 1-2.
[20] Rec. Doc. No. 19-1 (Plaintiff's Additional Fact No. 1).
[21] Rec. Doc. No. 20-1 (Defendant's response to Plaintiff's Fact No. 1).

the ATM side of the door, but it is unclear whether the markings say, "DO NOT ENTER" or "EMERGENCY EXIT."[22]

Both parties agree the door did not have a "visual" such as a window where the employees could have seen through to the other side.[23] Plaintiff asserts that the security officer pushed the door open without regard for anyone located on the other side of the door, but he does not provide any evidence to support this argument.[24] In response, Defendant cites to the surveillance footage,[25] asserting it shows "the door being opened in a normal fashion for the purpose of pushing through a cart."[26] The parties further dispute the amount of space between the open door and the ATM, with Plaintiff claiming the space was "little" and Defendant asserting Plaintiff's failure to provide evidence as to "any measurement of the space."[27]

In support of its Motion, Defendant submitted surveillance footage of the incident, deposition excerpts from Plaintiff[28] and Weams,[29] and an Unsworn Declaration[30] from the

---

[22] Exhibit C-1, camera 1120; Exhibit C-1, camera 887.
[23] Rec. Doc. No. 19-1 (Plaintiff's Additional Fact No. 2); Rec Doc. No. 20-1 (Defendant's response to Plaintiff's Fact No. 2).
[24] Rec. Doc. No. 19-1, p. 7 (Plaintiff's Additional Fact No. 5).
[25] Plaintiff argues that Defendant's Motion "relies heavily on surveillance footage" and such reliance is insufficient to support summary judgment. Rec. Doc. No. 19, p. 6. While the *Scott v. Harris* Court held that in instances where video recordings contradict a plaintiff's recollection to such a degree that no reasonable juror could credit the plaintiff's testimony, the court must accept the facts as shown in the recording, the Fifth Circuit has further refined this rule, clarifying that a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Crane v. City of Arlington, Texas*, 50 F.4th 453, 462 n.28 (5th Cir. 2022). The Court concludes the video is subject to interpretation and thus a question for the jury.
[26] Rec. Doc. No. 20-1, p. 3 (Defendant's response to Plaintiff's Fact No. 5).
[27] Rec. Doc. No. 19-1, p. 6 (Plaintiff's Additional Fact No. 6); Rec. Doc. No. 20-1, p. 3 (Defendant's response to Plaintiff's Fact No. 6).
[28] Rec. Doc. No. 17-3.
[29] Rec. Doc. No. 17-4.
[30] Although Defendant's affidavit is labeled an "Unsworn Affidavit," it is still admissible for summary judgment purposes. The Fifth Circuit has held, "[u]nder 28 U.S.C. § 1746, a litigant may submit an unsworn declaration as evidence in support of or against summary judgment. However, the declaration must be in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: … 'I declare (or certify, verify, or state) under penalty of perjury that the

Caino's Risk Manager, Jeannine Richert ("Richert" or "Risk Manager").[31] Plaintiff has not provided any evidence and cites only Defendant's exhibits, including the surveillance footage, deposition excerpts, and Richert's declaration.[32] Plaintiff alleges premises liability and vicarious liability for the alleged negligence of the employee opening the door. Defendant moves for summary judgment on both claims, arguing that 1) "neither the door nor the placement of the ATM presented an unreasonable risk of harm"[33] pursuant to a risk-utility analysis for premises liability, and 2) "the act of opening the door [did not] create[] an unreasonable risk of harm" pursuant to any negligence argument Plaintiff makes.[34] Plaintiff raises six arguments in opposition: (1) the facts in the record present direct and material conflicts regarding how the incident occurred, whether Defendant's employee acted reasonably, and whether the risk was foreseeable; (2) Defendant's reliance on surveillance footage is insufficient to support summary judgment; (3) Defendant created a foreseeable and unreasonable risk of harm under Louisiana law; (4) Defendant is liable for active negligence and employee-created hazard; (5) the "open and obvious" defense does not warrant summary judgment; and (6) application of Louisiana premises liability law weighs in Plaintiff's favor.[35]

---

foregoing is true and correct. Executed on (date)'. (Signature*)" See Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 F. Appx. 958, 961 (5th Cir. 2020). Here, the unworn affidavit meets all of the requisite declarations. Rec. Doc. No. 17-5, p. 2, line 15.

[31] Rec. Doc. No. 17-5.

[32] Defendant asserts in its reply that Plaintiff has failed to present any evidence to support his opposition argument, specifically any expert evidence. Rec. Doc. No. 20, pp. 2-4. It points to the fact that Plaintiff did not submit a single exhibit but relies solely on Defendant's evidence. Defendant has failed to identify any law or statutory authority to support its contention that Plaintiff's failure to provide his own evidence constitutes a failure to meet his summary judgment burden. The Fifth Circuit has established the nonmoving party need not "produce evidence in a form that would be admissible at trial ... [since] Rule 56 does not require the nonmoving party to depose [his] own witnesses[; but rather,] permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in 56(c), except the mere pleadings themselves." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[33] Rec. Doc. No. 17-1, pp. 9-16.

[34] Rec. Doc. No. 1-1, pp. 16-18.

[35] Rec. Doc. No. 19.

## II. LAW AND ANALYSIS

### a. Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[36] This determination is made "in the light most favorable to the opposing party."[37] A party moving for summary judgment "'must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case.'"[38] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[39] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[40]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[41] All reasonable factual inferences are drawn in favor of the nonmoving party.[42] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely

[36] Fed. R. Civ. P. 56(a).
[37] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[38] *Guerin v. Pointe Coupee Par. Nursing Home*, 246 F. Supp. 2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Celotex Corp.*, 477 U.S. at 323–25.
[39] *Rivera v. House. Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[40] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[41] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[42] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

how this evidence supports his claim."[43] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations ... to get to a jury without' any significant probative evidence tending to support the complaint.'"[44]

**b. Premises Liability**

Plaintiff pleads premises liability under Louisiana C.C. art. 2317.1.[45] In response, Defendant largely focuses its motion for summary judgment on Plaintiff's failure to demonstrate an unreasonable risk of harm for premises liability or negligence.[46] The Louisiana Supreme Court has held that "[w]hether a claim arises in negligence under La. [C.C.] art. 2315 or in premises liability under La. [C.C.] art. 2317.1, the traditional duty/risk analysis is the same."[47] Both theories apply the duty/risk analysis:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element);
> (2) the defendant's conduct failed to conform to the appropriate standard (the breach element);
> (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
> (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and,
> (5) proof of actual damages (the damages element).[48]

---

[43] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citation omitted).
[44] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (alteration in original) (quoting *Anderson*, 477 U.S. at 249).
[45] Rec. Doc. No. 1. La C.C. art. 2317.1 provides: "The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case."
[46] Rec. Doc. No. 1-1, p. 5.
[47] *See Farrell, v. Circle K Stores, Inc.*, 2022-008439 (la. 3/17/23) 359 So.3d 467, 473.
[48] *See Id., Alfred v. Walgreen Louisiana Company, Inc.*, 2025-0578 (La. App. 4 Cir. 5/20/26) 437 So.3d 147, 151; *Moore v. BRP Investments, L.L.C.*, 378 So.3d 792, 798 (La. App. 4 Cir. 5/20/26).

### 1. Duty

The first element in a duty/risk analysis for both premises liability and negligence is duty: whether Defendant had a duty to conform its conduct to a specific standard.[49] For purposes of the premises, "an owner or custodian of property has a duty to keep the premises in a reasonably safe condition," and upon discovery of any unreasonably dangerous conditions on the premises, "either correct the condition or warn potential victims of its existence."[50] For purposes of negligence, the duty is the familiar "duty of reasonable care."[51] Duty is a question of law.[52] Accordingly, as the owner of the casino property, Defendant has a duty to keep the premises reasonably safe and correct any unsafe conditions—upon discovery of said conditions—or warn potential victims of any unsafe conditions.

### 2. Breach of Duty

With respect to the second step of a duty/risk analysis—whether the defendant's conduct failed to conform to the appropriate standard (the breach element)—Louisiana courts apply the risk/utility balancing test.[53] This requires weighing the following factors: 1) the utility of the complained-of-condition; 2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; 3) the cost of preventing the harm; and 4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature.[54] Ultimately, "[i]f the application of the risk/utility

---

[49] *Farrell*, 359 So.3d at 473.
[50] *Id*. at 474; *Dickson-Bruno v. Mandeville Marketplace Investors NO, LLC*, 2023-1328 (La. App. 1 Cir 12/27/24) 404 So.3d 50, 57; *Moore*, 378 So.3d at 798; La. C.C. art. 2317.1.
[51] *Claborne v. Hous. Auth. of New Orleans*, 2023-0214, (La. App. 4 Cir. 3/21/24), 401 So. 3d 669, 683.
[52] *Farrell*, 359 So.3d at 473.
[53] *Farrell*, 359 So.3d at 474; *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14) 171 So.3d 851, 856.
[54] *Farrell*, 359 So.3d at 474.

balancing test results in a determination that the complained of hazard is not an unreasonably dangerous condition, a defendant is not liable because there was no duty breached."[55] Moreover, determination of "[w]hether there was a breach of the duty owed is a question of fact or a mixed question of law and fact."[56] *Farrell* changed the landscape by holding that "the analytic framework for evaluating an unreasonable risk of harm is properly classified as a determination of whether a defendant breached a duty owed, rather than a determination of whether a duty is owed ab initio."[57] While duty is a "question of law," breach is a "question of fact."[58]

**a. Utility of the Complained-of-Condition**

The first step of a risk/utility balancing test is to determine the utility of the complained-of condition.[59] Defendant asserts the utility of the door is for both emergency exit purposes and employees to transit the area.[60] Defendant further asserts the utility of the ATM is to provide "patrons an accessible spot to cash in winnings or obtain cash."[61] Collectively, Defendant contends both the doors and the ATM were intended to be in their respective locations, citing to Risk Manager Richert's Unsworn Declaration:

> 9. The primary purpose of the doors at issue was use for emergency exit purposes from the other side, and the doors were also occasionally utilized by employees to transit the area for things like the transports of money carts.
> 10. The door is a part of the building itself, and the ATM was intentionally placed in that corner of the Riverbend Terrace to afford patrons an accessible spot to cash in winnings or obtain cash.
> 11. Both the doors and the ATM were intended to be present at the subject location.[62]

---

[55] *Id*. at 478.
[56] *Farrell*, 359 So.3d at 474.
[57] *Farrell*, 359 So.3d at 475-76.
[58] *Id*. at 476.
[59] *Farrell*, 359 So.3d at 474.
[60] Rec. Doc. No. 17-1, p. 10.
[61] *Id*.
[62] Rec. Doc. No. 17-5, pp. 1-2.

Plaintiff counters that "the risk arose not from the existence of the door alone, but from its relationship to that standing area and the manner in which it operated."[63] Plaintiff argues that "Defendant placed an ATM in a location where patrons are expected to stand, remain stationary, and focus their attention on financial transactions."[64] Moreover, the security officer "opened an outward-swinging door directly into a space where patrons were foreseeably present, without warning and without ensuring the path was clear."[65]

Defendant conflates intentional placement of the ATM vis-à-vis the doors with utility. While there is utility of the doors and the ATM, Defendant fails to identify the utility of the placement of the ATM in proximity and relation to the door. The utility of the configuration of the door and ATM is a material question of fact.

**b. Likelihood and Magnitude of Harm**

The second factor in a risk/utility analysis is to determine the likelihood that the condition will cause harm.[66] The *Farrell* court held that "[i]f it is likely to cause harm, that weighs in favor of finding it unreasonably dangerous," and "if it is unlikely to cause harm, that weighs in favor of it not being unreasonably dangerous."[67] Further, "the magnitude of the harm factor asks whether the condition presents a risk of great or small injury and the likelihood of each."[68]

Louisiana courts consider whether a hazard is open and obvious when determining the likelihood and magnitude of harm:

> For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. The open and obvious concept

---

[63] Rec. Doc. No. 19, p. 8.
[64] Rec. Doc. No. 19, p. 7.
[65] *Id*. at p. 8.
[66] *Farrell*, 359 So.3d, at 474.
[67] *Id*.
[68] *Id*.

> asks whether the complained of condition would be apparent to any reasonable person who might encounter it. If so, that reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous. Whether the plaintiff has knowledge of the condition is irrelevant in determining whether the thing is defective.[69]

As such, the open and obvious analysis is an objective standard.[70]

The sign on the gaming floor side of the doors either says "Emergency Exit" or "Do Not Enter."[71] The hinge on the doors indicated the direction of the doors swing, namely, into the gaming floor.[72] Defendant argues the "presence of the doors and the ATM's location near them was open and obvious."[73]

Plaintiff reiterates that it is not the doors alone or the ATM alone that present the unreasonable risk of harm, but rather "the combination of a stationary patron zone and a moving door [that] creates a predictable collision point," and a "door opened into that space [directly next to the ATM] creates a high likelihood of impact and a meaningful risk of injury."[74] Plaintiff argues that, although the doors and ATM may be open and obvious due to their existence, the open and obvious doctrine is "not dispositive and must be considered within the broader risk/utility analysis."[75] Plaintiff maintains that "even when a condition is visible, the inquiry does not end; the Court must determine whether the

---

[69] *Id.* at 478.
[70] The *Farrell* court highlights that a "plaintiff's knowledge is appropriately considered in asserting fault, but it is not appropriate for summary judgment proceedings." *Id*.
[71] The exact words are unclear from the surveillance, but the limited use of the doors is clear from the testimony of the Risk Manager, who said the doors are only "occasionally used by employees. Rec. Doc. No. 17-5, pp. 1-2.
[72] Rec. Doc. No. 17-1, p. 12; Exhibit C-1 camera 1120; Exhibit C01, camera 887.
[73] Rec. Doc. No. 17-1, p. 13.
[74] Rec. Doc. No. 19, p. 8.
[75] Rec. Doc. No. 19, pp. 10-11. Plaintiff cites to *Farrell*, 359 So.3d at 474, which states: "it is inaccurate to profess that a defendant generally does not have a duty to protect against an open an obvious condition. There is, with limited exception, the duty to exercise reasonable care and to keep that which is within our custody free from an unreasonable risk of harm."

condition, [taken] in context, presents an unreasonable risk of harm."[76] Plaintiff further submits that "the risk was not the existence of a door, but the sudden and unannounced movement of that door into a populated space."[77] Finally, Plaintiff argues that, "[b]ecause the risk depended on timing, employee conduct, and lack of warning, it was not open and obvious as a matter of law."[78]

Plaintiff argues that the security officer who opened the door failed to ensure the path was clear.[79] The surveillance video is inconclusive. A reasonable jury could interpret the surveillance footage in a manner of ways. Whether the way the door was opened was unreasonably a question of fact for the trier of fact.

The Court finds that a reasonable jury could find that the configuration of the ATM and doors poses an unreasonable risk of harm and that a reasonable jury could find that the opening of the door without any warning into a populated space where people are expected to congregate due to the placement of the ATM was unreasonable.

### c. Cost of Preventing the Harm

There is no evidence of cost of preventing the harm. The Court is unable to consider this factor.

### d. Nature of Plaintiff's Activities

The fourth and final element of the risk/utility analysis is evaluation of the nature of Plaintiff's activities in terms of social utility or whether the activities were dangerous by nature.[80] Here, the security footage depicts Plaintiff approaching the ATM, then stepping

---

[76] Rec. Doc. No. 19, p. 10.
[77] *Id.*
[78] *Id.* at 11.
[79] Rec. Doc. No. 19, p. 6.
[80] *Farrell*, 359 So.3d, at 479.

to the side of the ATM, towards the direction of the wall surrounding the doors.[81] Defendant argues the "customer is under a duty to use ordinary care to avoid injury,"[82] and Plaintiff "elected to stand with his back to a door that he knew was a working door, and he thus put himself in danger."[83]

Plaintiff counters that he was "positioned to the side of the ATM, consistent with normal use of that space, when the door was opened into him" and maintains his "conduct was entirely reasonable" because there is no evidence he "acted unpredictably or placed himself in danger."[84] A reasonable jury could interpret the evidence either way. Accordingly, the Court finds there is a genuine dispute of material fact as to whether the nature of Plaintiff's activities caused or contributed to the harm encountered.

Considering the circumstances as a whole and viewing the evidence in the light most favorable to Plaintiff,[85] the Court finds there is a genuine dispute of material fact as to the utility of the configuration of the doors relative to the placement of the ATM and the utility of the employee's use of the doors which primarily served as an emergency exit.[86]

Defendant cites to *Lopez v. State, Louisiana Health Care Authority/University Medical Center*,[87] where a plaintiff was struck by a hospital door. In the *Lopez* case, the court found under a premises liability analysis that, "given [Plaintiff's] intimate knowledge of the area and his cognizance of the fact that the door did not have a push bar and would open into him, the door at issue did not pose an unreasonable risk of harm to him."[88] The

---

[81] Exhibit C-1, camera 1120; Exhibit C-1, camera 887.
[82] *Degree v. Galliano Truck Plaza, LLP*, 2018-066 (La. App. 1 Cir. 2019) 271 So.3d 315, 318.
[83] Rec. Doc. No. 17-1, p. 14.
[84] Rec. Doc. No. 19, pp. 7-8.
[85] Fed. R. Civ. P. 56(a).
[86] Rec. Doc. No. 17-5, pp. 1-2.
[87] *Lopez v. State, Louisiana Health Care Authority/University Medical Center*, 98-577 (La. App. 3 Cir. 10/28/98) 721 So.2d 518, 520-21.
[88] *Id*. at 525.

Court finds *Lopez* distinguishable on its facts. The plaintiff in Lopez was "standing 'right in front of the doorstop' and … others were waiting along the opposite wall."[89] In *Lopez*, the plaintiff had the option to stand where others stood and out of harm's way of the door. In this case, the Defendant chose to put an ATM near doors that swung in the direction of the ATM that was placed there for the use of Casino patrons.

Defendant also cites to this Court's ruling in *Douglas v. Forestwood Apartments/Baton, Rouge, Ltd.*, where the Court dismissed the case because the plaintiff failed to establish the premises conditions presented an unreasonable risks of harm.[90] In *Douglas*, the plaintiff "tripped and fell while descending concrete steps outside of an apartment building owned and maintained by the [d]efendants."[91] The alleged condition in *Douglas* was a "grassy area to the right of the steps [that was] flush with one step, and the base of the retaining wall align[ed] with the next step down."[92] Defendant quotes the Court's observance that "the simple fact that an accident occurred does not alone 'elevate the condition of the thing to that of an unreasonably dangerous defect.'"[93] Defendant misconstrues *Douglas*. The Court did not hold that an isolated incident cannot be unreasonably dangerous.

Defendant cites to the Fifth Circuit's decision in *Spencer v. United States,* where the Court affirmed the lower court's granting of summary judgment because the plaintiff failed to set forth any evidence of an unreasonably dangerous condition or the defendant's

[89] *Id*. at 525.
[90] *Douglas v. Forestwood Apartments/Baton, Rouge Ltd.*, No. CV 20-677, 2022 WL 10655711 at *5 (M.D. La. Oct. 18, 2022).
[91] *Id*. at 1.
[92] *Id*.
[93] *Id*. at 3.

knowledge of that condition.[94] In *Spencer*, an employee was injured on a United States military base when she was hit by an automatic door. She "had trouble opening [the] automatic door, which snapped back and struck her shoulder."[95] The *Spencer* court granted summary judgment because plaintiff failed to provide evidence that the door was defective or that the defendant was aware of any potential risk because it was an isolated incident. Here, Plaintiff has not set forth any evidence to indicate whether other similar incidents have occurred. However, Plaintiff has pointed to evidence concerning the configuration of the ATM in relation to the doors.[96] The Defendant admits that the door and the ATM were intentionally placed hence notice of the alleged unreasonable condition os not in dispute.

Plaintiff argues that Defendant's act of placing the ATM near the door created a high likelihood of impact and a meaningful risk of injury, ultimately arguing that Defendant created an unreasonable risk of harm.[97] Defendant contends that Plaintiff's "creation" argument is misplaced and that "creation" actually falls within a merchant liability analysis, not a premises liability analysis.[98] Defendant notes that the merchant liability statute allows for proof that a merchant "created" the unreasonable risk of harm while premises liability only allows for proof of actual or constructive notice.[99]

Louisiana courts have specifically found premises owners at fault "in creating the hazardous condition which resulted in [Plaintiff's injury]."[100] Furthermore,

---

[94] *Spencer v. U.S.*, 463 F. App'x 368, 373 (5th Cir. 2012).
[95] *Id.* at 370.
[96] Exhibit C-1, camera 1120; Exhibit C-1, camera 887.
[97] Rec. Doc. No. 17-1, p. 16.
[98] Rec. Doc. No. 20, p. 7.
[99] Rec Doc. No. 20, p. 7; La. R.S. 9:2800.6.
[100] *Luquette v. Great Lakes Reinsurance*, 15-422 (La. App. 5 Cir. 12/21/16) 209 So.3d 342, 349.

> [w]here plaintiffs prove that a defendant is the actor directly responsible for the creation of an unreasonable risk of harm which causes injury, regardless of the location, that defendant may, depending on the results of a duty-risk analysis, be held liable as the tortfeasor. The scienter requirement only applies when the plaintiff seeks recovery of damages against a premises owner on the basis of a premises hazard created by a third party.[101]

It is not unreasonable to conclude that if a defendant creates a risk, then they also have constructive knowledge of the risk because they should be aware of the risk. Here, Plaintiff asserts "[t]his placement [of the ATM in relation to the doors] confirms that Plaintiff was exactly where Defendant should have anticipated patrons would be."[102] Constructive notice requires the existence of facts that would infer actual knowledge, and a reasonable jury might conclude that Defendant's placement of the ATM served as an inference to actual knowledge that the configuration posed an unreasonable risk.

The Court finds the facts of *Castille v. Wal-Mart* analogous.[103] In *Castille*, the plaintiff was seated on a bench situated near an automated door in the Wal-Mart lobby, and she was injured when her arm became stuck in the door. The premises owner caused the patron to be in a position to be impacted by the doors. The *Castille* court found that "the placement of the bench in such close proximity to the automatic door created an unreasonable risk of harm." [104]

**c. Negligence Claim**

Defendant also moves for summary judgment arguing that "the act of opening the door [did not] create[] an unreasonable risk of harm" pursuant to any negligence argument Plaintiff makes.[105] As discussed above, the Court finds that there are material issue of

---

[101] *Fontenot v. Fontenot*, 93-2479 (La. 1994) 635 So.2d 219, 222 (La. 1994).
[102] Rec. Doc. No. 19, p. 7.
[103] *Castille v. Wal-Mart Stores, Inc.*, 98-121 (La. App. 5 Cir. 3/30/99) 731 So. 2d 904.
[104] *Id.* at 907.
[105] Rec. Doc. No. 1-1, pp. 16-18.

fact as to the utility of using doors which were primarily for emergency ingress and which opened into an area which provided an ATM for patron use. Accordingly, Defendant's motion of summary judgment as to negligence is also denied.

## III. CONCLUSION

After reviewing the competent summary judgment evidence, the briefs, the parties' submissions of facts, and the law, the Court finds that the material facts are disputed. For the reasons set forth above, Defendant's Motion for Summary Judgment[106] is denied.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 16th day of November, 2026.

Shelly D. Dick

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

[106] Rec. Doc. No. 17.